1  Felicia Y. Yu (SBN 193316)
   Margaret Grignon (SBN 76621)
2  Behzad B. Mohandesi (SBN 214921)
   Jordan S. Yu (SBN 227341)
3  REED SMITH LLP
   355 South Grand Avenue, Suite 2900
4  Los Angeles, CA  90071-1514
   Telephone:  213 457 8000
5  Facsimile:  213 457 8080
   Email:      fyu@reedsmith.com
6              mgrignon@reedsmith.com
               bmohandesi@reedsmith.com
7              jsyu@reedsmith.com

8  Attorneys for Defendants
   APOLLO GROUP, INC., and THE
9  UNIVERSITY OF PHOENIX, INC.

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| 14 | ANGELA RUSS; SHAWN MARTIN; and NITISHA INGRAM, individually and on behalf of all others similarly situated, | No.: CV09-0904 VBF (FMOx) |
|---|---|---|
| 15 | | **CLASS ACTION** |
| 16 | Plaintiffs, | **DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| 17 | vs. | |
| 18 | APOLLO GROUP, INC.; and THE UNIVERSITY OF PHOENIX, INC., | |
| 19 | Defendants. | Date:       March 22, 2010 |
| 20 | | Time:       1:30 p.m. |
| 21 | | Place:      Courtroom 9 312 N. Spring Street Los Angeles, CA  90012 |
| 22 | | The Honorable Valerie Baker Fairbank |

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................... 9

II.   STATEMENT OF FACTS ........................................................ 11

    A.   An Overview of Title IV Governing Federal Financial Aid.................. 11

    B.   UOPX's Title IV Refund Policies and Related Disclosures................... 13

III.  LEGAL STANDARD GOVERNING CLASS CERTIFICATION ................. 14

IV.   THE PROPOSED CLASS IS NOT ASCERTAINABLE ............................. 14

V.    THE CLASS FAILS TO MEET THE REQUIREMENTS OF RULE 23(a) ....................................................................... 16

    A.   The Proposed Class is Not Numerous. .................................... 16

    B.   The Named Plaintiffs' Claims are Not Typical of the Class. ............... 18

        1.   The Named Plaintiffs Did Not Suffer the Same Harm ............... 18

        2.   The Named Plaintiffs are Subject to Unique Defenses ................. 20

    C.   The Proposed Class is Not Adequately Represented ........................ 23

VI.   THE CALIFORNIA CLAIMS DO NOT MEET THE PREDOMINANCE REQUIREMENT OF RULE 23(b)(3). ........................... 23

    A.   The California Fraud Claim Cannot be Certified. ........................ 24

        1.   There was No Uniform Misrepresentation or Omission. ............. 24

        2.   Reliance Cannot Be Established on a Classwide Basis................. 25

    B.   Individual Issues Overwhelm the California Conversion Claim. ........... 28

    C.   The California Breach of Contract Claim Cannot Be Tried on a Classwide Basis........................................................... 29

        3.   The California Contracts are Not Uniform................................ 29

        4.   Whether Each Student's Contract Was Breached Requires a Review of Each Student's Individual Circumstances. ..................................................... 32

    B.   The California Claim For Breach of Implied Covenant of Good Faith And Fair Dealing Cannot Be Certified ........................... 32

    C.   Individual Issues Predominate in the California Claim for Unjust Enrichment ........................................................... 33

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

---

DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1
2

## TABLE OF CONTENTS
### (CONTINUED)

3

**Page**

4
5

D.    The California CLRA Claim Cannot Be Certified Because Reliance And Materiality Cannot be Proven on a Classwide Basis. ................................................................ 34

6

E.    The California UCL Claim Cannot Be Certified ..................................... 35

7

VI.   A Class ACTION IS NOT A SUPERIOR METHOD FOR ADJUDICATING THE CLAIMS RAISED IN THIS CASE ............................. 37

8
9

VII.  PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF RULE 23(b)(2) FOR THE PROPOSED NATIONWIDE CLASSES ............ 39

10

A.    The Nationwide Fraud and Breach of Contract Claims Are Not Cohesive ................................................................ 39

11
12

B.    The Proposed Nationwide Classes Seek Predominantly Monetary Relief ....................................................... 41

13

C.    Choice-of-Law Issues Prevent Certification of the Nationwide Fraud and Breach of Contract Claims Under Rule 23(b)(2) ................... 42

14

VIII. CONCLUSION ................................................................ 43

15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

## CASES

*American Oil Service v. Hope Oil Co.,*
194 Cal. App. 2d 581 (1961) ............................................................................ 14

*Andrews v. AT&T Co.,*
95 F.3d 1014 (11th Cir. 1996) ......................................................................... 30

*Barnes v. Am. Tobacco Co.,*
161 F.3d 127 (3d Cir. 1998) ............................................................................ 32

*Beley v. Municipal Ct.,*
100 Cal. App. 3d 5 (1979) ............................................................................... 31

*Bishop v. Saab Auto, A.B.,*
1996 U.S. Dist. LEXIS 22890 (C.D. Cal. 1996) ............................................. 7

*Briggs v. Countrywide Funding Corp.,*
183 F.R.D. 576 (M.D. Ala. 1997) ................................................................... 18

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) .................................................................... 18, 23

*Buckland v. Threshold Enterprises, Ltd.,*
155 Cal. App. 4th 798 (2007) .......................................................................... 27

*Burlesci v. Petersen,*
68 Cal. App. 4th 1062 (1988) .......................................................................... 20

*Cal. Cosmetology Coalition v. Riley,*
110 F.3d 1454 (9th Cir. 1997) ........................................................................... 3

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) ....................................................................... 30, 35

*Clausnitzer v. Fed. Exp. Cor.,*
248 F.R.D. 647 (S.D. Fla. 2008) ..................................................................... 36

*Coalition of New York State Career Schools, Inc. v. Riley,*
129 F.3d 276 (2d Cir. 1997) .............................................................................. 3

*Cohen v. DirecTV,*
178 Cal. App. 4th 996 .............................................................................. 27, 29

*Crosby v. Social Sec. Admin.,*
796 F.2d 576 (1st Cir. 1986) ............................................................................. 8

*Danvers Motor Co., Inc. v. Ford Motor Co.,*
543 F.3d 141 (3d Cir. 2008) ............................................................................ 25

*Deitz v. Comcast Corp.,*
2007 WL. 2015440 (N.D. Cal. 2007) ........................................................ 13, 27

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– iii –

*Duchardt v. Midland Nat'l Life Ins. Co.,*
  2009 WL 3824332 (S.D. Iowa July 23, 2009) ................................................ 35

*Dukes v. Walmart, Inc.,*
  509 F.3d 1168 (9th Cir. 2007) ............................................................ 6

*Edge v. C. Tech Collections, Inc.,*
  203 F.R.D. 85 (E.D.N.Y 2001) .......................................................... 8, 9

*Elliott v. ITT Corp.,*
  150 F.R.D. 569 ........................................................................ 34

*Endres v. Wells Fargo Bank,*
  2008 U.S. Dist. LEXIS 12159 (N.D. Cal. 2008) ............................................ 14

*Fannie v. Chamberlain Mfg. Corp.,*
  445 F. Supp. 65 (W.D. Pa. 1977) ........................................................ 11

*First Nationwide Savings v. Perry,*
  11 Cal. App. 4th 1657 (1992) ........................................................... 25

*Forman v. Data Transfer, Inc.,*
  164 F.R.D. 400 (E.D. Pa. 1995) ........................................................ 7, 8

*Gardiner Solder Co. v. SupAlloy Corp. Inc.,*
  232 Cal. App. 3d 1537 (1991) ......................................................... 26, 31

*Gariety v. Grant Thornton, LLP,*
  368 F.3d 356 (4th Cir. 2004) ........................................................... 6

*Gen.Tel. Co. of SW v. Falcon,*
  457 U.S. 147 (1982) ............................................................. 6, 10, 15

*Graybeal v. Am. Sav. & Loan Ass'n.,*
  59 F.R.D. 7 (D.D.C. 1973) ............................................................. 26

*Hammett v. Am. Bankers Ins. Co. of Fl.,*
  203 F.R.D. 690 (S.D. Fla. 2001) ...................................................... 32, 33

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1002) ........................................................... 6

*Hudson v. Capital Mgmt. Int'l., Inc.,*
  565 F. Supp. 615 (N.D. Cal. 1983) ...................................................... 35

*In re Bridgestone/Firestone, Inc.,*
  288 F.3d 1012 (7th Cir. 2002) .......................................................... 35

*In re Currency Conversion Fee Antitrust Litig.,*
  224 F.R.D. 555 (S.D.N.Y. 2004) ........................................................ 16

*In re IPO Sec. Litig.,*
  471 F.3d 24 (2d Cir. 2006) ............................................................. 6

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– iv –

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*,
   193 F.R.D. 505 (W.D. Mich. 2000)...................................................................30

*In re Prempro Products Liability Litigation*,
   230 F.R.D. 555 (E.D. Ark. 2005), *citing* Barnes, 176 F.R.D. at 500..........32, 34

*In re Rezulin Prods. Liab. Litig.*,
   210 F.R.D. 61 (S.D.N.Y 2002).................................................................31, 34

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)............................................................................27, 29

*In re Worldcom, Inc.*,
   343 B.R. 412...................................................................................................18

*In the Matter of Friedman's, Inc.*,
   363 B.R. 629 (S.D. Ga. 2007) (23(b)(2)..........................................................33

*In re Paxil Litigation*,
   212 F.R.D. 539 (C.D. Cal. 2003)............................................................10, 35

*Jackson v. Motel 6 Multipurpose, Inc.*,
   130 F.3d 999 (11th Cir. 1997)........................................................................30

*Jordan v. Paul Fin. LLC*,
   2009 WL 192888 (N.D. Cal. 2009).................................................................13

*Kaldenbach v. Mutual of Omaha Life Ins. Co.*,
   178 Cal. App. 4th 830...............................................................................17, 29

*Kenro, Inc. v. Fax Daily, Inc.*,
   962 F. Supp. 1162 (S.D. Ind. 1997)..................................................................8

*Koos v. First Nati'l Bank of Peoria*,
   496 F.2d 1162 (7th Cir. 1974).........................................................................12

*Leahy v. Warden*,
   163 Cal. App. 178 (1912)...............................................................................14

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000)...........................................................................25

*Leeper v. Beltrami*,
   53 Cal. 2d 195 (1959)....................................................................................14

*Liles v. Am. Corrective Counseling Servs., Inc.*,
   231 F.R.D. 565 (D. Iowa 2005).........................................................................7

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007)......................................................................6, 33

*Lukovsky v. San Francisco*,
   2006 WL 140574 (N.D. Cal. 2006)...................................................................7

DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Mack v. General Motors Acceptance Corp.*,
  169 F.R.D. 671 (M.D. Ala. 1996) ................................................................18, 35

*Mahfood v. QVC, Inc.*,
  2008 WL. 5381088 (C.D. Cal. 2008) ..................................................................34

*Marino v. Home Depot U.S.A., Inc.*,
  734-35 (S.D. Fl. 2007)........................................................................................35

*Maxwell v. Cty. of San Luis Obispo*,
  71 Cal. 466 (1886) ..............................................................................................14

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004) .............................................................................25

*McKell v. Washington Mut., Inc.*,
  142 Cal. App. 4th 1457 (2006) ...........................................................................25

*McNair v. Synapse Group, Inc.*,
  2009 WL. 1873582 (D.N.J. June 29, 2009) ........................................................25

*Mirkin v. Wasserman*,
  5 Cal. 4th 1082 (1993).........................................................................................17

*Oshana v. Coca-Cola Co.*,
  225 F.R.D. 575 (N.D. Ill. 2005) ............................................................................7

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*,
  150 Cal. App. 4th 384 (2007) .............................................................................21

*Pacific Gas & Electric Co. v. Zuckerman*,
  189 Cal. App. 3d 1113 (1987) .......................................................................14, 15

*Penson v. Terminal Transp. Co.*,
  632 F.2d 989 (5th Cir. 1981) ..............................................................................32

*Poulos v. Caesars World, Inc.*,
  379 F.3d 654 (9th Cir. 2004) ..............................................................................19

*Powers v. Gov. Employees Ins. Co.*,
  192 F.R.D. 313 (S.D. Fl. 1998) ..........................................................................34

*Quezada v. Loan Ctr. of California*,
  2009 WL. 513506 (E.D. Cal. 2009) ....................................................................13

*Sanchez v. Walmart Stores, Inc.*,
  2009 WL. 2971553 (E.D. Cal. 2009) ..................................................................28

*Shelley v. Board of Trade*,
  87 Cal. App. 344 (1927) ......................................................................................14

*Simon v. Merrill Lynch, Pierce Fenner & Smith*,
  482 F.2d 880 (5th Cir. 1973) ..............................................................................20

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– vi –

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ......................................................................10

*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 198) ..........................................................12

*Stickle v. SCI Western Market Support Center, L.P.*,
   2009 WL 3241790 (D. Ariz. 2009) ...............................................10

*Sutherland v. Barclays Am. Mortgage Corp.*,
   53 Cal. App. 4th 229 (1997) .........................................................25

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ...........................................................6

*Vu v. Cal. Commerce Club, Inc.*,
   58 Cal. App. 4th 229 (1997) .........................................................20

*Western Gulf Oil Co. v. Title Ins. and Trust Co.*,
   92 Cal. App. 2d 257 (1949) ..........................................................14

*Wilcox Development Co. v. First Interstate bank of Oregon, N.A.*,
   97 F.R.D. 440 (D. Oregon 1983).............................................23, 33

*Zenith Labs., Inc. v. Carter-Wallace, Inc.*,
   530 F.2d 508 (3d Cir. 1976) ..........................................................12

*Zinser v. Accufix Research Instit.*,
   253 F.3d 1180 *amended*, 273 F.3d 1266 (9th Cir. 2001) ...........6, 35

## STATUTES

20 U.S.C. § 1091b...................................................................................3

20 U.S.C. § 1232g(b) ...........................................................................31

20 U.S.C. § 1232g *et seq* ...................................................................31

34 C.F.R. § 668.22 ..........................................................................1, 3, 4

34 C.F.R. § 99.1 *et seq*.......................................................................31

34 C.F.R. § 99.30 .................................................................................31

Cal. Civ. Code § 1780.........................................................................27

F.R.C.P. Rule 23 ..........................................................................passim

20 U.S.C. §§ 1070-1099),........................................................................3

Bus. & Prof. Code § 17204................................................................27

Business & Professions Code § 17200 ........................................passim

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

In this putative class action, Plaintiffs Angela Russ, Nitisha Ingram and Julia Moorehead contend they do not have to pay any of their tuition-related debts to Defendants Apollo Group, Inc. and The University of Phoenix, Inc. ("UOPX") because Defendants allegedly could have satisfied these debts with Plaintiff's available financial aid funds but instead returned the students' financial aid to the federal aid sources, and then improperly tried to collect from the Plaintiffs directly. FAC ¶ 1.[1]  Plaintiffs further complain that Defendants failed to give prospective students "meaningful notice" of their alleged "routine practice" of not applying federal financial aid to the accounts of students who withdrew early from UOPX. FAC ¶ 2.

Based upon these allegations of wrongdoing, Plaintiffs assert claims for fraud and breach of contract on behalf of a nationwide class of former UOPX students. FAC ¶ 41; Motion at 2.  In addition, Russ seeks to represent a California sub-class on claims for fraud, conversion, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, violation of the Consumer Legal Remedies Act ("CLRA"), and violation of Business and Professions Code § 17200 ("UCL").  FAC ¶ 42; Motion at 2.  Plaintiffs misapprehend both Defendants' obligations under Title IV of the Higher Education Act of 1965 regarding financial aid and the class action requirements of F.R.C.P. Rule 23.

First, the class definition proposed by Plaintiffs is unascertainable, as it requires mini-trials on the merits to determine who is a member of the class.  Yet whether a student was entitled to receive federal financial aid after withdrawing from school,

---

[1] *See also* FAC ¶¶ 12, 13b, 14e, 15b, 16b, and 33 ("By unilaterally cancelling students' Federal loans, UOP improperly denied students the use of federal funds that they had earned and to which they were entitled, under 34 CFR § 668.22, to pay for their educational expenses.)  *See also* Motion for Class Certification at 1.

– 1 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

and whether Defendants properly applied the student's financial aid to tuition charges cannot be determined without a detailed review of each student's circumstances in accordance with Title IV regulations.  However, this is precisely the type of individualized inquiry that is contrary to the notion of a representative action.

Next, Plaintiffs have not made a prima facie showing that the proposed class is numerous.  Moreover, an examination of each Plaintiff's circumstances reveals that they are not typical of each other, much less an entire class of former students.  Specifically, under the Title IV refund analysis required by federal law, Russ was entitled to some of the financial aid originally awarded to her and UOPX was obligated to return the rest.  In contrast, Ingram was determined to have been incorrectly certified for financial aid, so all of her funds had to be returned to the federal programs.  Meanwhile, Moorehead was properly certified to receive financial aid, but she withdrew from school before her loans were disbursed, which resulted in an "inadvertent overpayment" that she was not entitled to keep.  Moorehead did, however, qualify for a "post-withdrawal disbursement" that was applied by UOPX to her tuition charges.  Notably, proof of one Plaintiff's claims would not establish the claims of the others.

In addition, individual issues predominate in this case regarding what written or oral representations were made to the Plaintiffs prior to enrollment and whether Plaintiffs understood and relied on these statements.  Moreover, Defendants' agreements and disclosures and policies varied in accordance with state law and each student's financial aid decisions.  There is also no uniformity or cohesion in the type of relief sought by, and available to, the class members.  Some class members acknowledge they need to pay Defendants for coursework completed, while others maintain they do not.  Meanwhile, the wholesale voiding of all tuition debt owed by the class members cannot be proper remedy in this case, as Defendants are entitled to assert offsets and counter-claims for educational services provided.  Not surprisingly, Plaintiffs provide no proposal in their Motion for Class Certification for how the

– 2 –

1   California and nationwide claims can be tried.  For all the foregoing reasons, the

2   Motion should be denied.

3   **II.     STATEMENT OF FACTS**

4       **A.     <u>An Overview of Title IV Governing Federal Financial Aid</u>.**

5         Congress enacted the Higher Education Act (HEA) of 1965 (20 U.S.C. §§

6   1070-1099), including Title IV among other programs, to provide federal assistance to

7   eligible students attending eligible post-secondary educational institutions, such as

8   UOPX.  In 1992, Congress amended the HEA "to improve the accountability and

9   integrity of institutions participating in Title IV programs."  *Coalition of New York*

10  *State Career Schools, Inc. v. Riley*, 129 F.3d 276, 277 (2d Cir. 1997).  As part of that

11  accountability effort, the HEA was amended to require educational institutions to

12  refund Title IV funds to the federal programs upon the early withdrawal of the

13  student.  *Cal. Cosmetology Coalition v. Riley*, 110 F.3d 1454, 1455-56 (9th Cir. 1997).

14  Specifically, the HEA as amended provides that if a student withdraws from an

15  educational institution before completing the period of enrollment for which the Title

16  IV funds have been paid, the educational institution must refund the unearned portion

17  of the funds to reimburse the Title IV programs.  *Id.  See also* 20 U.S.C. § 1091b; 34

18  C.F.R § 668.22.

19        The federal government, through detailed procedures set forth in the Title IV

20  regulations, specifies how a student's Title IV funds must be returned by an

21  educational institution   *See generally*, 34 C.F.R. § 668.22.  These Title IV regulations

22  specify that a student who withdraws early from an educational institution may not be

23  eligible to receive the full amounts of Title IV funds that he or she was originally

24  awarded for a payment period.  As described below, 34 C.F.R. § 668.22 establishes

25  specific procedures an institution must follow to determine: 1) how much Title IV aid

26  the student has "earned" during attendance at the institution; 2) how much Title IV aid

27  must be returned to the Title IV programs and the lenders, and 3) who is required to

28  return the Title IV funds.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 3 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    <u>Amount of Title IV Aid Earned</u>:  The amount of Title IV aid earned by the

2    student is equal to the percentage of the payment period completed by the student

3    prior to the student's withdrawal multiplied by the total Title IV aid disbursed or

4    scheduled to be disbursed in the payment period.  If, for example, the student has

5    completed 45 percent of the payment period, then the student has "earned" 45 percent

6    of the Title IV funds the student received or was scheduled to receive in the payment

7    period.  Once a student has completed more than 60 percent of the payment period,

8    the student has earned, and is entitled to receive, 100 percent of all Title IV funds the

9    student received or was scheduled to receive in the payment period.  34 C.F.R. §

10   668.22(e).

11   <u>Amount of Title IV Funds to be Returned</u>: The amount of Title IV aid that must

12   be returned to the Title IV grant or loan programs is equal to the difference between

13   the total Title IV aid disbursed to the student and the Title IV aid "earned" by the

14   student.  34 C.F.R. § 668.22(e)(4).

15   <u>Title IV Funds to Be Repaid by School</u>: The amount of Title IV aid to be repaid

16   by the school is the lesser of: i) the total Title IV aid that must be returned or ii) the

17   total institutional charges for the payment period multiplied by the percentage of the

18   Title IV grant or loan funds that have not been earned by the student.  34 C.F.R. §

19   668.22(g).

20   <u>Title IV Amount to Be Repaid By Student</u>: The student is required to repay any

21   additional amounts required to be returned, beyond what the school is required to

22   repay, subject to certain exceptions.  One such exception is that the regulations place

23   certain limits on the extent to which students must repay Pell grant dollars.  34 C.F.R.

24   § 668.22(h).

25   <u>Post-Withdrawal Disbursement</u>: If the student receives less Title IV aid than the

26   amount earned, the institution must offer a disbursement of the earned aid that was not

27   received, which amount may be disbursed post-withdrawal if specified conditions are

28   met, with some exceptions for grant funds.  34 C.F.R. §668.22(a)(4).

– 4 –

**B.**   <u>**UOPX's Title IV Refund Policies and Related Disclosures.**</u>

UOPX's Title IV refund policies are disclosed to students in the University of Phoenix Catalog.  "Additional Refund Policies for Students Receiving Federal Financial Aid," "Overpayment" and "Post-withdrawal Disbursement."  Ex. 1, 2, 3.[2] The Title IV refund policies also are referenced and acknowledged in various enrollment and financial aid documents signed by students.  *See e.g.,* Enrollment Agreement, Ex. 9, 30, 47, 67; Student Financial Agreement, Ex. 10, 31, 48, 68; Financial Aid Application, Ex. 11, 32, 49, 69; Financial Aid Entrance Interview, Ex. 12, 33, 50, 70; Disclosure Agreement, Ex. 13.

Moreover, students are advised, by multiple sources and disclosures, that their Title IV funds may not cover all school expenses and that they are responsible for any charges not covered by financial aid.  *See e.g.,* Financial Aid Application, Ex. 11, 32, 49, 69; Student Financial Agreement, Ex. 10, 31, 48, 68; University Policies – Shortfall in Funding, Ex. 13, 34, 51, 71; University of Phoenix – Southern California, Financial Aid Tuition Worksheet, Ex. 27; Undergraduate Tuition Management Worksheet w/rEsources, Ex. 52.

Various documents provided to students also advise that withdrawing or being out of attendance could affect students' financial aid awards, require the return of all or a portion of their federal financial aid, and result in the students owing the University for any unpaid institutional charges.  *See e.g.* University of Phoenix Catalog -- Campus Cancellation/Refund Policies, Ex. 1, 2, 3; University Policies – Attendance Policy, Ex. 13, 34, 51, 71; University Policies – Shortfall in Funding, *id*; University Policies – Satisfactory Academic Progress Policy for Title IV Recipients, *id*; University Policies – "W," "F" or "I/F" Grades, *id*; Student Financial Agreement,

---

[2] The documents referenced herein are submitted in the accompanying Defendants' Compendium of Exhibits, with the relevant language bracketed for the Court's convenience.

– 5 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Ex. 10, 31, 48, 68; Financial Aid Application, Ex. 11, 32, 49, 69; Disclosure

Agreement; Ex. 14; Master Promissory Note, Ex. 62.

## III.   LEGAL STANDARD GOVERNING CLASS CERTIFICATION

Class actions are an "exception to the usual rule that litigation is conducted by

and on behalf of the individual named parties only." *Gen.Tel. Co. of SW v. Falcon*,

457 U.S. 147, 155 (1982).  A court considering class certification must conduct a

"rigorous analysis" of the factual record to determine whether the plaintiffs have met

their burden of demonstrating that the proposed class meets all four requirements of

F.R.C.P. Rule 23(a) and at least one of the requirements of Rule 23(b).  *Lozano v.*

*AT&T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007); *Zinser v. Accufix*

*Research Instit.*, 253 F.3d 1180, 1186, *amended*, 273 F. 3d 1266 (9th Cir. 2001);

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

That analysis must reach beyond the mere allegations of the complaint and the

class representatives' and counsel's assertions of what can be proved on common

issues and defenses.  *See Dukes v. Walmart, Inc.*, 509 F.3d 1168, 1177 n.2 (9th Cir.

2007) ("we recognize that courts are not only 'at liberty' to but must 'consider

evidence which goes to the requirements of Rule 23 even [if] the evidence may also

relate to the underlying merits of the case") *quoting Hanon v. Dataproducts Corp.*,

976 F.2d 497, 509 (9th Cir. 1002); *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir.

2006) (a district court must "resolve[] factual disputes relevant to each Rule 23

requirement" even when "a merits issue . . . is identical with a Rule 23 requirement")*;*

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365-66 (4th Cir. 2004) ("If it were

appropriate for a court simply to accept the allegations of a complaint at face value in

making class action findings, every complaint asserting the requirements of Rule 23(a)

and (b) would automatically lead to a certification order, frustrating the district court's

responsibilities.")

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 6 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   THE PROPOSED CLASS IS NOT ASCERTAINABLE

Plaintiffs' Motion for Class Certification stumbles at the threshold of Rule 23(a).  Although not specifically mentioned in Rule 23(a), there is an additional prerequisite to certification – that the class be adequately defined and clearly ascertainable.  *See e.g.*, *Lukovsky v. San Francisco*, 2006 WL 140574, *2 (N.D. Cal. 2006); *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005).  To meet this ascertainability requirement, the class representative must: (1) specify a particular group that was harmed in a particular way, and (2) facilitate the court's ability to ascertain its membership in some objective manner.  *Liles v. Am. Corrective Counseling Servs., Inc.* 231 F.R.D. 565, 571 (D. Iowa 2005); *Bishop v. Saab Auto, A.B.*, 1996 U.S. Dist. Lexis 22890, *12-14 (C.D. Cal. 1996).  Class treatment provides no judicial economy if a court must conduct hundreds of "mini-trials" simply to determine who might be in the class.  *Id.  See also Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) (rejecting class because determining class membership would require a "mini hearing on the merits" as to the central liability issue).

Here, Plaintiffs seek to certify the following class:

> "All UOP students who enrolled since February 5, 2005 and opted to pay for tuition by means of federal financial aid; who applied and were certified to receive federal financial aid; who accrued tuition related debt; whose federal financial aid was not used to pay for tuition related debt and instead was returned to the lender by UOP; and from whom UOP sought direct payment of such debt."

Motion at 1.  Plaintiffs' proposed class definition is not ascertainable because membership in the class cannot be determined without "mini-trials" as to the central liability issue, namely, whether a student was properly "certified" to receive federal financial aid and whether UOPX failed to apply the student's financial aid funds to tuition debts.

Yet, whether a student was properly "certified" to receive financial aid and the amount of financial aid "earned" by a student prior to withdrawal cannot be resolved

– 7 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    without examining factors such as the particular student's enrollment date, the

2    student's last date of attendance, the total amount of financial aid disbursed, the type

3    of financial aid disbursed (loans versus grants); the date the financial aid was

4    disbursed, the date any student's loan was certified, the amount of coursework

5    completed by the student before withdrawing, and the total institutional charges for

6    the payment period.  *See generally* Title IV refund regulations (supra at 3).  *See also*

7    Declaration of Robert T. Collins ("Collins Decl.").

8        Likewise, whether UOPX failed to apply the financial aid "earned" by each

9    student to the student's tuition charges can only be determined after comparing the

10   amount of Title IV funds "earned" by the student against the tuition charges owed by

11   the student.  The amount of tuition charges owed by a student, however, depends on

12   the length of the student's attendance at UOPX.  Collins Decl. ¶ 16.  Moreover, the

13   tuition charges that can be assessed on a withdrawing student may vary, in accordance

14   with state law.  Collins Decl. ¶ 16; Ex. 1, 2, 3.

15       Where, as here, a decision on the merits is needed to determine whether a

16   person is a member of a class, the proposed class definition is unmanageable virtually

17   by definition.  *Kenro, Inc. v. Fax Daily, Inc*. 962 F.Supp. 1162, 1169 (S.D. Ind. 1997),

18   *Crosby v. Social Sec. Admin*., 796 F.2d 576, 580 (1st Cir. 1986) (denying certification

19   where definition of class made "class members impossible to identify prior to

20   individualized fact-finding and litigation"); *Forman*, 164 F.R.D. at 403.

21   **V.    THE CLASS FAILS TO MEET THE REQUIREMENTS OF RULE 23(a)**

22       **A.    <u>The Proposed Class is Not Numerous.</u>**

23       A prerequisite for certifying a class is the determination that the class is so

24   numerous that joinder of all members individually is "impracticable."  F.R.C.P. Rule

25   23(a)(1).  Where plaintiff's assertion of numerosity is based on mere conclusory

26   allegations that the class is so immense that joinder is impracticable, the motion for

27   class certification must be denied.  *Edge v. C. Tech Collections, Inc.,* 203 F.R.D. 85,

28   89 (E.D.N.Y 2001).

– 8 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

In this case, Plaintiffs offer only the following facts to address Rule 23(a)(1)'s numerosity requirement:  (1) for the fiscal year ending August 31, 2006, UOPX had an enrollment of over 260,000 students; (2) the completion rate for all UOPX students was 46%; (3) the majority of students received financial aid; (4) approximately 69% of UOPX's revenues are derived from federal loan money; and (5) UOPX had 44 facilities in California.  Motion at 7.  Notably, Plaintiffs do not explain how, from these facts, the Court could be assured that the proposed class is sufficiently numerous.  These facts do not remotely suggest the number of students who allegedly had their student loans cancelled by UOPX, and who were improperly denied the use of federal financial aid funds that they had earned, and to which they were entitled to pay for their educational expenses, as alleged in the FAC and Motion.  *See e.g.* FAC ¶ 1, 33; Motion ¶ 1.

Indeed, Plaintiffs have not even demonstrated that the three named Plaintiffs Russ, Ingram and Moorehead, or former named Plaintiff Shawn Martin, fall within the proposed class.  As examined in the accompanying Declaration of Robert T. Collins, any financial aid earned by Russ, Moorehead and Martin prior to withdrawing from UOPX was, in fact, applied to their tuition charges.  Collins Decl. ¶¶ 17, 41, 52.  As for Ingram, she was determined by UOPX to have been ineligible for federal financial aid because her loans were certified after her last date of attendance at UOPX.  Collins Decl. ¶ 29.  If even the named Plaintiffs do not fall within the proposed class definition, there can be no assurance that the proposed class is sufficiently numerous. *Edge*, 203 F.R.D. at 89 ("The plaintiff urges the Court to make the 'common sense assumption' that joinder would be impracticable.  Such a conclusion would be a leap of faith based on pure speculation, not a common sense assumption").  Plaintiffs have elected to file a Motion for Class Certification supported by surmise alone, and they are now bound by that election.[3]

---

[3] To the extent Plaintiffs hope to supplement their meager showing with their Reply Brief, such

**B.**    **The Named Plaintiffs' Claims are Not Typical of the Class.**

**1.    The Named Plaintiffs Did Not Suffer the Same Harm**

F.R.C.P. Rule 23(a)(3) requires that the claims and defenses of the class representatives be typical of the claims and defenses of the class.  The named plaintiffs must suffer the same harm they allege as to the class.  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court"); *General Tel. Co. of Southwest*, 457 U.S. at 156- 58 (typicality not met as plaintiff is not member of the class he seeks to represent); *Gonzalez*, 247 F.R.D. 616, 621 (typicality defeated as plaintiff did not suffer the same injury as many class members).

Here, the circumstances of the named Plaintiffs could not be more different.  For example, Russ was entitled to receive financial aid and UOPX did apply all earned financial aid to her institutional charges, pursuant to the Title IV refund regulations.  Collins Decl. ¶ 17.  Unlike Russ, Ingram was not subject to a return of Title IV refund analysis at all.  Rather, her financial aid was processed as a "gross refund" because UOPX determined she was incorrectly certified to receive financial aid in the first place.  Collins Decl. ¶ 29.  Meanwhile, Moorehead was subject to a different set of Title IV regulations governing "inadvertent overpayments," and "late disbursements" and "post-withdrawal disbursements."  Collins Decl. ¶ 37-41.  As illustrated by the review of just the named Plaintiffs' circumstances, there are a myriad of factors that affect an institution's Title IV return obligation.

---

efforts are impermissible.  *See Stickle v. SCI Western Market Support Center, L.P.*, 2009 WL 3241790, *4 (D. Ariz. 2009) (striking affidavits newly submitted by plaintiff with reply brief and not considering them for purposes of class certification); *It re Paxil Litigation,* 212 F.R.D. 539, 544 (C.D. Cal. 2003) (denying class certification because "Plaintiffs here fail to carry their burden of showing, *prior* to class certification, that the differences in state laws within each of their groupings are nonmaterial . . .  The fact that the reformulation of the classes occurred in their *reply brief* reflects the seemingly cavalier manner in which Plaintiffs have researched and briefed the groupings.") (emphasis in original).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Further, Plaintiffs received, reviewed and understood different written disclosures during the enrollment process.  For example, Russ testified that she read the Financial Aid Entrance Interview Form, and understood the various disclosures as stating that financial aid would cover all tuition related debt incurred by her, which serves as a lynchpin for her claims (*e.g.,* Ex. 29, 73:19-74:9), while Ingram did not testify that this same document affected her decision to enroll at UOPX.  Ex. 46, 76:15-77:3 ("Q: Did this document affect your decision to enroll at University of Phoenix?  A: I don't remember.").  As for Moorehead, she first stated that she understood this document, but later stated that she could not recall if she understood it or not as she "sign[s] a lot of papers."  Ex. 66, 102:5-105:16.[4]  *Fannie v. Chamberlain Mfg. Corp.*, 445 F. Supp. 65, 72 (W.D. Pa. 1977) (no typicality where certain allegations applied to only some members of the class).

In addition, Plaintiffs' belief regarding UOPX's Title IV return obligations were formed through various different sources, including different written disclosures and oral discussions with different UOPX personnel.  Russ testified that her beliefs as to UOPX's Title IV return obligations were formed by her review of numerous different UOPX written disclosures, as well as her conversation with UOPX's financial aid officer.  Ex. 29, 60:16-23 (Q: Okay.  So that's what I'm trying to understand.  You had this understanding about how your financial aid would work.  A: Right.  Q: Is that based on just the language here with the continuous attendance that you previously read, that paragraph?  A: It's based on the combination of the conversation with my financial aid officer, all the documents that I read, as well as the fin—I mean, the documents being the financial options guide, the catalog, all of those combined.").

---

4 Former named Plaintiff Martin, however, recalled reviewing the Financial Aid Entrance Interview, but acknowledged that he did not review further disclosures regarding UOPX's Title IV return obligations even though these additional disclosures were made available to him, and even though he acknowledged reviewing and understanding these additional disclosures. Ex. 80, 103:9-106:20; 73:20-74:25; 79:23-80:18; 84:10-15.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   Ingram, however, could not recall which documents or disclosures led her to

2   believe that financial aid would cover all her courses.  Ex. 46, 49:12-50:14, 52:18-23,

3   53:7-10, 65:4-66:2, 85:1-86:3, 77:1-3.  Moorehead testified that she was assisted by a

4   UOPX representative on financial aid matters at the time of enrollment, (Ex. 66,

5   38:16-39:15, 44:10-45:18, 86:18-87:5), but testified that she signed the various

6   disclosures without understanding them in any event.  Ex. 66, 66:18-67:16, 71:6-

7   73:14, 75:17-77:7, 105:4-16.  Further, Moorehead could not recall if she reviewed the

8   University of Phoenix Catalog or Consumer Information Guide, including the

9   cancellation and refund policies contained within them.  Ex. 66, 67:21-25.[5]

10   In sum, an examination of one named Plaintiff's student records will not shed

11   light on how UOPX acted with respect to the others regarding financial aid.  Proof of

12   one named Plaintiff's claims will not establish the claims of the other named

13   Plaintiffs, much less those of the proposed class.  Accordingly, Rule 23(a)(3)'s

14   typicality requirement has not been met in this case.  *Sprague v. General Motors*

15   *Corp.*, 133 F.3d 388, 399 (6th Cir. 198) (no typicality where claims turn on individual

16   issues).

17   **2.   The Named Plaintiffs are Subject to Unique Defenses**

18   If potential defenses to the representative's claims raise "legitimate issues" that

19   may require substantially different proof not applicable to other class members, those

20   claims are not typical of the class, and certification must be denied.  *Zenith Labs., Inc.*

21   *v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (no certification where

22   representative subject to unique defenses); *Koos v. First Nati'l Bank of Peoria*, 496

23   F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the

24

25   [5] As for former named Plaintiff Martin, his understanding of financial aid was based on his own
    assumption of how financial works and his conversations with a UOPX representative.  Ex. 80,
26   50:23-51:18.  In addition, Martin testified that he did not review the University of Phoenix Catalog
    or Consumer Information Guide prior to enrollment (which includes the cancellation and refund
27   policies), although he acknowledged that this information was available to him.  Ex. 80, 73:20-
    74:25, 79:23-80:18; 84:10-15.

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  litigation will be on an arguable defense unique to the named plaintiff or a small

2  subclass, then the named plaintiff is not a proper class representative").

3      In this case, Ingram seeks to represent a nationwide class of UOPX students

4  who were "certified" to receive federal financial aid and "whose federal financial aid

5  was not used to pay for tuition related debt."  Motion p. 1.  Ingram, however, is

6  susceptible to the unique defense that she was not entitled to receive any financial aid

7  at all because her student loans were incorrectly certified on March 16, 2007, after her

8  last date of attendance of March 14, 2007.  Collins Decl. ¶ 28, 29; Ingram's Responses

9  to RFA, No. 12, Ex. 12.  Whether Ingram was correctly or incorrectly certified for

10  financial aid goes to the heart of her case, as Plaintiffs concede that a return of Title

11  IV money is required if a school determines that its certification of a student's

12  eligibility is incorrect.  *See* FAC ¶ 39.  This unique defense renders Ingram an atypical

13  and improper class representative.

14      Next, Moorehead's claims are not typical of the proposed class because she

15  apparently did not read the UOPX disclosures and financial aid documents that

16  underlie this case.  *Quezada v. Loan Ctr. of California*, 2009 WL 513506 at *3, 5

17  (E.D. Cal. 2009) (plaintiff's failure to read loan documents defeated her showing of

18  typicality); *Jordan v. Paul Fin. LLC*, 2009 WL 192888 at *5 (N.D. Cal. 2009) (the

19  possibility that the class representative did not read the loan documents establishes

20  that the litigation will focus on a defense unique to him); *Deitz v. Comcast Corp.*,

21  2007 WL 2015440 at *5 (N.D. Cal. 2007).  For example, Moorehead could not recall

22  if she reviewed the University of Phoenix Catalog or Consumer Information Guide,

23  including the cancellation and refund policies contained within.  Ex. 66, Dep. 67:21-

24  25.  Moorehead was also uncertain about which documents she reviewed and signed at

25  the time of her enrollment.[6]  Given Moorehead's equivocation, it is perhaps not

26  ────────────────

27  6 *See* Declaration of Julia A. Moorehead, Ex. 64 ¶ 1-3 ("*My best recollection* is that at the time of my enrollment, I was instructed to sign the University of Phoenix Enrollment Agreement and Student Financial Agreement")("*My best recollection* is that the Student Financial Agreement

28

– 13 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  surprising that Plaintiffs did not submit her declaration in support of the Motion for

2  Class Certification.  *See* Declaration of Michael D. Braun.

3  Lastly, unique defenses also bar Russ from representing the nationwide and

4  California classes.  Specifically, on December 19, 2006 and August 31, 2007, Russ

5  paid in full to UOPX the tuition charges that she now disputes.  Collins Decl. ¶ 19.

6  Russ then waited almost two years, until December 9, 2008, to file suit to recover the

7  payments she made.  *See* Civil Case No. 4:08-cv-04199 SWW (E.D. Arkansas)

8  Docket No. 1.  Accordingly, she is subject to the unique defense of the voluntary

9  payment doctrine.  In general, money voluntarily paid to another with knowledge of

10  the relevant facts cannot be recovered even if the payor had no obligation to make the

11  payment, unless the payment was made under duress or fraud.  *Pacific Gas & Electric*

12  *Co. v. Zuckerman*, 189 Cal. App. 3d 1113, 1144 (1987) ("[Plaintiff] made those

13  payments with an awareness of the facts, and defendants accepted the payments in

14  good faith and cannot be made to refund them").  Such is the case here, where UOPX

15  believed in good faith that the money was owed.  *See* Collins Decl. ¶ 18-20.[7]

16  Accordingly, Russ' voluntary payment renders her claim atypical of the class.  *E.g.*

17  *Endres v. Wells Fargo Bank*, 2008 U.S. Dist. LEXIS 12159 (N.D. Cal. 2008) (denying

18  class certification)("For example, the application of affirmative defenses would

19  require an individualized analysis as to each class member. These include the

---

required that I select a method of tuition payment")("***My best recollection*** is that after indicating that I was going to use Federal Aid to finance my attendance at the school, I was instructed to review and electronically sign additional documents including one called Financial Aid Entrance Interview")(emphasis added).

[7] See also *Western Gulf Oil Co. v. Title Ins. and Trust Co.*, 92 Cal. App. 2d 257, 265-66 (1949); *Leahy v. Warden*, 163 Cal. App. 178, 181-82 (1912) ("Payments voluntarily made cannot be recovered"); *American Oil Service v. Hope Oil Co.*, 194 Cal. App. 2d 581 (1961).  Indeed, even where the payor could not have been legally compelled to make a payment, the voluntary payment doctrine still precludes recovery of the payment.  *Shelley v. Board of Trade*, 87 Cal. App. 344, 349-350 (1927); *Maxwell v. Cty. of San Luis Obispo*, 71 Cal. 466, 468 (1886) (holding that money paid to the tax collector to avoid prosecution under a void law still constituted a voluntary payment). Furthermore, a party's filing of a lawsuit or threat to take legal action against a debtor does not constitute duress.  *Leeper v. Beltrami*, 53 Cal. 2d 195, 204 (1959); *Leahy*, 163 Cal. App. at 181.

– 14 –

DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   applicability of the voluntary-payment doctrine, which may bar any claims made by

2   class members who continued to incur and voluntarily pay the overdraft protection

3   fees").[8]

4   ### C.   The Proposed Class is Not Adequately Represented

5   Rule 23(a)(4) requires that a class representative "fairly and adequately protect

6   the interests of the class."  The adequacy inquiry serves to uncover conflicts of interest

7   between the named parties and the class they seek to represent.  *Amchem Prods.*, 521

8   U.S. at 625-26.  Here, none of the named Plaintiffs are members of the class they seek

9   to represent.  This, without more, defeats adequacy.  *General Tel. Co. of Southwest*,

10  457 U.S. at 156- 58 (adequacy not met as plaintiff is not member of the class he seeks

11  to represent).

12  ## VI.   THE CALIFORNIA CLAIMS DO NOT MEET THE PREDOMINANCE

13  REQUIREMENT OF RULE 23(b)(3).

14  Plaintiff Russ seeks to represent a California sub-class on claims for fraud,

15  conversion, breach of contract, breach of the implied covenant of good faith and fair

16  dealing, unjust enrichment, violation of the CLRA, and violation of the UCL pursuant

17  to FRCP Rule 23(b)(3).  In order to certify a Rule 23(b)(3) class on these California

18  claims, Plaintiff Russ must establish that "questions of law or fact common to class

19  members predominate over any questions affecting only individual members."

20

21  [8] The voluntary payment doctrine also defeats predominance, as any class member who paid a
tuition debt owing to UOPX would be disqualified from the class, or at the very least, the

22  circumstances of such payment would have to be examined on a case-by-case basis to determine if
the voluntary payment doctrine applies.  In other words, it cannot be determined on a classwide basis

23  whether former students paid their tuition debt to UOPX under duress, as Russ now contends, or
because they fully understood and agreed that they were contractually obligated to pay tuition costs

24  not covered by financial aid.  *See e.g.*, Ex. 11, 32, 49, 69 ("I understand that although I have applied
for student financial aid, I am responsible for all charges incurred while attending the University.  I

25  will, therefore, pay any charges not covered by financial aid.")  In this regard, it should be noted that
Martin paid the outstanding balance of $273 on his UOPX account on or about May 29, 2009 (*See*

26  Collins Decl. ¶ 53; Ex. 53) while he was a named Plaintiff in this very lawsuit and while he was
represented by Plaintiffs' counsel.  Under these circumstances, Martin can hardly claim that he made

27  his payment without awareness of the facts.  *See Pacific Gas & Electric Co. v. Zuckerman*, 189 Cal.
App. 3d 1113, 1144 (1987).

28

F.R.C.P. Rule 23(b)(3); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555 (S.D.N.Y. 2004) (to satisfy Rule 23(b)(3)'s predominance requirement, a plaintiff must establish that issues subject to generalized proof predominate over those subject to individualized evidence). For the reasons set forth below, none of the California claims can be certified under Rule 23(b)(3).

**A.    The California Fraud Claim Cannot be Certified.**

To prove fraud under California law, a plaintiff must establish: (1) a misrepresentation of a material fact or a fraudulent omission; (2) knowledge of falsity; (3) intent to defraud, *i.e.*, to induce reliance, (4) justifiable reliance, and (5) resulting damages. *Gonzalez v. Proctor & Gamble Company*, 247 F.R.D. 616 (S.D. Cal. 2007). In this case, Plaintiff Russ alleges that prior to enrollment, UOPX provided her with a Student Financial Agreement and a Financial Aid Entrance Interview form. FAC ¶ 13(e). Russ alleges that neither document provided her "with notice that if she were to withdraw from UOP, UOP would not apply Title IV financial aid funds to cover her tuition costs." *Id.* In fact, Russ alleges that the Financial Aid Entrance Interview suggested the contrary. ("I must repay my entire loan even if I do not complete my education…") *Id.* Russ contends that but for the availability of financial aid, she would not have attended UOPX. *Id.* Russ also maintains that she suffered injury as a result of UOPX's omissions and misleading representations "including money paid to UOP on her behalf and any debt incurred to UOP." *Id.* As examined below, individual issues overwhelm the California fraud claim asserted by Russ.

**1.    There was No Uniform Misrepresentation or Omission.**

First, although Russ bases her misrepresentation and omission claim on just the Student Financial Agreement and the Financial Aid Entrance Interview (Exs. 10 and 12), she also received a host of other documents that discussed or referenced financial aid and UOPX's cancellation and refund policy. *See* Exs. 9, 11, 12, 13, 14, 24, 25, 26, 27. In addition, Russ testified that her belief as to UOPX's Title IV return obligations were formed by her review of numerous different UOPX written disclosures, as well

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 16 –

as her conversation with a UOPX financial aid officer.[9]  Thus, Russ' fraud claim cannot be certified because there was no uniform misrepresentation or omission made to all California UOPX students.  *See Kaldenbach v. Mutual of Omaha Life Ins. Co*., 178 Cal.App.4th 830, 851 (2009) (where there were significant individual issues as to whether there were in fact any misrepresentations, omissions, or nondisclosures made to individual purchasers, the trial court did not abuse its discretion by denying class certification).

### 2. Reliance Cannot Be Established on a Classwide Basis.

Further, for each California class member, these purported misrepresentations or omissions must have been material.  *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993).  "A misrepresentation of fact is material if it induced plaintiff to alter his position to his detriment.  [citation].  Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did." *Caro*, 18 Cal. App. 4th at 668, *quoting Lacher v. Superior Court*, 230 Cal. App. 3d 1038, 1049 (1991).

In *Caro*, the court affirmed the denial of class certification in an action asserting fraud and deceit, negligent misrepresentation, violation of the UCL and CLRA, unjust enrichment and breach of contract, among other claims.  Plaintiffs, purchasers of defendant's orange juice, alleged that consumers overpaid for orange juice as a result of a deceptive advertising and labeling campaign that misrepresented the orange juice as "fresh" and as containing "no additives."  *Id.* at 668.  The court concluded that whether any particular misrepresentation was "material" – *i.e.*, whether the consumer was deceived by it and relied upon it, turned upon consumers' "personal assumptions

[9] Ex. 29, 60:16-23 ("Q: Okay.  So that's what I'm trying to understand.  You had this understanding about how your financial aid would work.  A: Right.  Q: Is that based on just the language here with the continuous attendance that you previously read, that paragraph?  A: It's based on the combination of the conversation with my financial aid officer, all the documents that I read, as well as the fin—I mean, the documents being the financial options guide, the catalog, all of those combined.")

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 17 –

about the nature of the products they wanted to buy and upon reading various portions of the [orange juice carton] labels." *Id.* at 668-69. Therefore, "whether any asserted misrepresentation induces the purchase of [] orange juice would vary from consumer to consumer" and the issue of liability was not susceptible to classwide proof. *Id.* at 668.

To the extent plaintiffs base their fraud claim on omissions, the same individualized examination is needed. *Mack v. General Motors Acceptance Corp*., 169 F.R.D. 671, 677 (M.D. Ala. 1996); *Briggs v. Countrywide Funding Corp*., 183 F.R.D. 576, 581 n. 4 (M.D. Ala. 1997) (resolution of the reliance issue discussed requires the court to examine a whole host of individual issues); *In re Worldcom*, Inc., 343 B.R. 412, 422-23 (in a case alleging fraudulent omissions, threshold task of identifying class requires individual analysis as to reliance on omission, degree of reliance, and causal nexus between omission and damages); *Broussard v. Meineke Discount Muffler Shops, Inc*., 155 F.3d 331, 341 (4th Cir. 1998) ("if a plaintiff had an alternative source for the information that is alleged to have been concealed from or misrepresented to him, his ignorance or reliance on any misinformation is not reasonable").

Here, the reliance and materiality inquiry defeats predominance. An institution's Title IV return obligation is triggered only when a student withdraws from his or her course of study. Accordingly, unless a student enrolled at UOPX with the express intent or expectation of withdrawing early, it stands to reason that the student likely did not rely on any representation (or omission) concerning the return of Title IV funds. At the very least, each class member would have to be examined separately to answer this critical question. In fact, because all educational institutions eligible to receive Title IV funding are required to comply with the same federal regulations in returning Title IV funds, Russ' allegations would lead to the absurd conclusion that no student requiring financial aid would ever attend any school for fear of their financial aid being returned upon their early withdrawal.

– 18 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Not surprisingly, when pressed, Russ admitted that UOPX's purported

2 misrepresentations and omissions concerning its Title IV return obligations did not

3 affect her enrollment decision.  Ex. 29, 54:4-54:9 ("Q: Well, you previously testified

4 that you had every intention of finishing your school; right? A: Right.  Q: So were you

5 at all concerned about the refund information.  A: No."); Ex. 29, 79:17-80:10

6 (concerning the Title IV return disclosures, "Q: Were you concerned at all when you

7 saw this?  A: At that particular time, no, it didn't apply to me. Q: Okay. Because you

8 had no intention of withdrawing?  A: Right."); Ex. 29, 87:20-23 (concerning the Title

9 IV return disclosures, "Q: Okay.  But at the time you enrolled, this didn't matter to

10 you because you intended to complete your schooling anyways, right?  A:

11 Exactly.").[10]

12    At best, Russ' fraud claim is one of mixed representations and fraudulent

13 omissions regarding UOPX's Title IV return obligations.  FAC ¶ 13(e), 34, 35, 36, 40,

14 44(c), 44(d), 55, 56, 76.  Under these circumstances, a presumption of reliance is not

15 available.  *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004); *Gonzalez

16 v. Proctor and Gamble Co.*, 247 F.R.D. 616, 624 (S.D. Cal. 2007) (no presumption is

17 available if the record shows that the proposed class members received a variety of

18 different representations from defendants).

19    Moreover, as examined above, the named Plaintiffs each testified that they

20 reviewed multiple different disclosures in different UOPX documents regarding

21 —————————————————

22 [10] As further illustration, Ingram, Moorehead, and Martin also testified that they had no intentions of
withdrawing from UOPX.  Ingram Dep. Ex. 46, 68:14-24 ("Q: Now, as you were reading these
bullets – and it says, you know, if you withdraw, there may be a cancellation revision of student

23 financial awards; right?  But at the time you were reading this, did that make you think about early –
what's going to happen if you drop out?  A: No.  Q: Because you were fully excited about going to

24 school, and you wanted to complete your MBA program; right?  A: Yes."); Moorehead Dep. Ex. 66,
106:7-107:1 ("A: Students out of attendance for over 29 days, that didn't apply to me so that was my

25 concept.  Q: And the reason it didn't apply to you, because you weren't going to be one of those
students who was going to be out of attendance?  .  .  .  A: Because I was going to be a full time

26 student.  Q: And not drop out; right?  A: Right."); Martin Dep. Ex. 80, 65:21-25 ("Q: So at the time
you actually enrolled, you didn't have any plans of withdrawing from school, correct?  A: No, sir.  I

27 mean, who does?  Why enroll if you're going to drop out?")

28

– 19 –

UOPX's Title IV return obligations.  Supra at 11-12.  Plaintiffs also testified that their understanding of UOPX's Title IV return obligations was shaped by conversations with UOPX personnel.  Russ, for example, said her belief was formed by reviewing the various financial aid disclosure documents and the Student Catalog in combination with her conversations with UOPX financial aid personnel.  Ex. 29, 58:17-60:23.  Ingram, on the other hand, had no recollection of how she formed her alleged belief that she is entitled to keep her financial aid money even if she withdraws from UOPX.  In fact, she could not recall one specific document from which, or a specific person from whom, she formed her asserted understanding.  Ex. 46, 49:12-50:14, 52:18-23, 53:7-10, 65:4-66:2, 85:1-86:3, 77:1-3.  Likewise, Moorehead could not recall the source of her asserted understanding, and when confronted with the clear disclosures of UOPX's Title IV return obligations, all of which she signed, she simply attributed the discrepancy to a difference in interpretation or a lack of recollection.  Ex. 66, 66:18-67:16, 71:6-73:14, 75:17-77:7, 105:4-16, 67:21-25, 78:15-21.  Further, Martin testified that his understanding of UOPX's financial aid return obligations came from the government, his conversation with a UOPX representative, and his general understanding of how financial aid works.  Ex. 80, 50:23-52:8.  As these examples make clear, there is simply no uniformity to how Plaintiffs came to form their alleged understanding as to UOPX's Title IV return obligations.  *Simon v. Merrill Lynch, Pierce Fenner & Smith*, 482 F.2d 880, 882 (5th Cir. 1973) (predominance defeated because plaintiff cannot provide proof of classwide misrepresentations and omissions).

**B.**    **Individual Issues Overwhelm the California Conversion Claim.**

The California conversion claim fares no better.  A conversion claim requires proof of the following: (1) plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; (3) resulting damages.  *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1065 (1988).  Moreover, to state a claim for relief for conversion, a plaintiff must prove entitlement

– 20 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

to a sum certain. *Vu v. Cal. Commerce Club, Inc*., 58 Cal. App. 4th 229, 235 (1997) (holding that trial court properly granted summary judgment against plaintiffs on their conversion claim where "neither by pleading nor responsive proof did plaintiffs identify any specific, identifiable sums that the club took from them."); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*, 150 Cal. App. 4th 384, 395 (2007) (holding that the trial court properly granted summary adjudication against plaintiffs on their conversion claim on the ground that plaintiffs failed to identify a "definite sum" of money received by defendant).

In this case, determining whether a California class member had a right to Title IV funds that were returned by UOPX, and whether UOPX wrongfully interfered with that student's right to the funds, is not amenable to classwide proof. As already discussed above, UOPX is mandated by federal law to perform a Title IV refund calculation when a student withdraws from school. But whether Title IV funds have been "earned" by a student can be determined only after a review of each student's date of enrollment, date of withdrawal, last date of attendance, coursework completed, the financial aid disbursement option selected by the student, the date of disbursement of the financial aid, the type of financial aid awarded, and any applicable state law governing tuition refunds, to name just a few factors. *See* supra at 3-4, 7-8; Collins Decl. Most tellingly, Plaintiff Russ has no clue what amount or "sum certain" UOPX purportedly converted from her. Ex. 28, Russ Resp. to Supp. Rog, Set One, No. 18. Nor do the other Plaintiffs. Ex. 44, Ingram, Resp. to Supp. Rog, Set One, No. 18; Ex. 65, Moorehead Resp. to Rog, Set One, No. 19; Martin Dep. Ex. 80, 142:14-144:2. Plaintiffs' confusion underscores why the conversion claim cannot be certified.

## C. <u>The California Breach of Contract Claim Cannot Be Tried on a Classwide Basis</u>.

### 1. The California Contracts are Not Uniform.

While Russ contends that all California students entered into "standardized, uniform contracts" with UOPX (Motion p. 15), she is unable to identify the specific

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

documents which comprise her agreement with UOPX.  Rather, Russ vaguely asserts that each student signed "enrollment agreements" and "student financial agreements." FAC ¶ 74.  In fact, Russ curiously states that a letter from her lender is also a contract between her and UOPX that UOPX breached.  Ex. 28, Russ Response to Supp. Rog. No. 19.  Russ' uncertainty alone suggests that the California contracts are not "standardized" or "uniform."  Moreover, as discussed below, even the seemingly "form" agreements contain significant variations.

For example, in the Financial Aid Application / Independent (Ex. 11), students must indicate whether they want to be certified for the "MAXIMUM" amount of loans or "LESS THAN THE MAXIMUM."  Students also can specify whether they want "UNSUBSIDIZED" loans.  *Id*.  A student must also indicate on the same form whether he or she is "receiving (or will receive) any other financial assistance (*e.g.*, employer-paid tuition assistance for course attendance, private student loans, scholarships, stipends, monetary gifts, Military Tuition Assistance, etc.) to attend the University of Phoenix," and if so, the student must complete the "Other Resources Form."  Further, the student must specify how he or she authorizes UOPX to apply her Title IV funds to any institutional charges.  *See* Ex. 11.[11]

Similarly, in the purportedly "standardized" Student Financial Agreement, students must select from a list of options to pay for their UOPX educations.  Again, Russ made elections different from the other named Plaintiffs.[12]  These student-

---

[11] For example, Russ did not authorize UOPX to retain Title IV funds to apply to "all open allowable charges" or "estimated future tuition charges" or her "University account."  She only permitted UOPX to apply the Title IV funds to "current outstanding institutional charges."  *See* Ex. 11.  In contrast, for example, the other named Plaintiffs did allow UOPX to retain Title IV funds for more than "current outstanding institutional charges."  Ex. 32, 49, 69.

[12] Notably, Russ selected only the "Financial Aid Plan," while the other named Plaintiffs specified that they would be paying for their UOPX educations under the "Financial Aid Plan" as well as the "Cash" and "Other" options.  *Compare* Exs. 10, 31, 48, 68.  Even though Russ selected only the "Financial Aid Plan," that does not end the analysis regarding her agreement to pay UOPX, as Plaintiff Russ also indicated, on a separate "University of Phoenix – Southern California Financial Aid Tuition Worksheet," that she would pay "Cash" in the amount of "$1,383.00" for "out of pocket expenses" which include tuition and costs not covered by financial aid. Ex. 27.  Further

1  directed variations to the "form" agreements are significant to this case, as they affect

2  how the financial aid funds were applied, disbursed, and returned as examined in the

3  Collins Declaration.  *See also Broussard*, 155 F.3d at 340 ("Plaintiffs simply cannot

4  advance a single collective breach of contract action on the basis of multiple different

5  contracts").

6          Moreover, the multiple contracts, the numerous disclosures within these

7  contracts, and the disparate interpretations given to each document and each

8  disclosure by the named Plaintiffs, also preclude certification.  In *Wilcox Development*

9  *Co. v. First Interstate bank of Oregon, N.A.*, 97 F.R.D. 440, 447 (D. Oregon 1983),

10  the court denied certification of plaintiffs' breach of contract claim against defendant

11  bank based on allegations that loans made by defendant used a definition of "prime

12  rate" that was different from the common usage definition.  In denying certification,

13  the court held that class members may have had knowledge of the bank's definition of

14  "prime rate" at the time they secured the loan, which requires an individual

15  adjudication of the knowledge of each class member.  *Id.* at  447.

16          UOPX, in numerous documents given to each student, discloses its Title IV

17  return obligations.  The named Plaintiffs and Martin all received and signed these

18  documents containing the Title IV return disclosures.  *See* Section II.B. supra.  Yet

19  they had different understandings of these disclosures.  For example, Russ understood

20  the disclosures to mean that she will owe no tuition charges to UOPX for classes she

21  already took, regardless of whether or not she withdraws from UOPX.  Russ Dep.

22  50:3-11; 57:11-18.  In contrast, Ingram testified that she believed the disclosures to

23  mean that financial aid would cover all tuition fees regardless of whether she

24  withdrew early.  Ex. 46, 49:12-50:14, 52:18-23, 53:7-10, 65:4-66:2, 85:1-86:3.

25

26  complicating the matter, there is a handwritten note on this form:  "Told financial aid rep didn't have
    the money for school; she said to sign anyway…".  Ex. 27.  Thus, an examination of just the

27  California representative's documents reveal that the contracts are anything but uniform and
    standardized in this case.

28

DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Meanwhile, Moorehead testified that she did not understand these disclosures at all. Ex. 66, 66:18-67:16, 71:6-73:14, 75:17-77:7, 105:4-16.  Undercutting his breach of contract claim, Martin testified that he understood from the Title IV return disclosure contained in the University Policies that if he withdrew from UOPX, his Title IV funds may be returned.  Ex. 80, 89:22-90:5 (Q: The top part where it says attendance policy to the part where you signed it, do you take those sentences there to mean that if you withdraw from the University of Phoenix your federal financial aid funds may be returned?  A: Yes.  Yes, sir.")  (objections omitted).[13]  These few examples demonstrate how quickly the California breach of contract claim degenerates into numerous individualized questions about the contractual terms at issue.

### 2.   Whether Each Student's Contract Was Breached Requires a Review of Each Student's Individual Circumstances.

Russ alleges that UOPX breached its contract with the class members when it "improperly cancelled, returned, paid off and/or did not disburse their Federal loans." FAC ¶ 79.  However, as discussed above, whether UOPX properly handled a student's Title IV funds can only be answered after undertaking the complex Title IV return analysis for each class member.  Supra at 3-4, 7-8; Collins Decl.  Such individualized inquiries, however, preclude certification of the California breach of contract claim cannot be certified.

### D.   The California Claim For Breach of Implied Covenant Of Good Faith And Fair Dealing Cannot Be Certified

Russ' breach of implied covenant claim simply recasts her breach of contract claim.  In every contract, there is an implied covenant by each party not to do anything

---

[13] In addition, each class member possesses a different level of background knowledge regarding financial aid, which in turn affected their interpretation of the disclosures at issue.  For example, Russ had twice before applied for financial aid before enrolling at UOPX, and even has a history of defaulting on her financial aid.  Ex. 29, 28:5-30:13; 46:12-16, 107:20-108:2, 110:4-9.  Martin, in contrast, had no experience with financial aid as UOPX was the first university he attended after high school.  Ex. 80, 18:25-19:11.

– 24 –

which will deprive the other party of the benefits of the contract. *Sutherland v. Barclays Am. Mortgage Corp*., 53 Cal. App. 4th 229 (1997). A party to a contract breaches the implied covenant by failing to cooperate with the other party in the performance of the contract. *Id.* Again, the ultimate fact of whether Defendants breached their implied covenant with respect to the contracts at issue will devolve into numerous individual inquiries concerning the terms of the contract, a class member's understanding of the contract, and whether any provision of the contracts were breached, a question that can only be answered after undertaking the Title IV return analysis for each class member. Accordingly, for the same reasons Plaintiff Russ' breach of contract claim cannot be certified, the breach of implied covenant claim also fails. *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141 (3d Cir. 2008) (vacating trial court's granting of class certification and holding that plaintiffs did not meet requirements for commonality, predominance, typicality, and adequacy for their claims of breach of contract and breach of covenant of good faith and fair dealing); *McNair v. Synapse Group, Inc*., 2009 WL 1873582, *13 (D.N.J. June 29, 2009) (denying plaintiffs' motion for class certification for breach of contract and the covenant of good faith and fair dealing, among other claims, because plaintiffs did not show that common issues predominate).

### E.    Individual Issues Predominate in the California Claim for Unjust Enrichment

To establish an unjust enrichment claim, plaintiffs must prove receipt of a benefit and unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 236 (2000). Unjust enrichment is not a separate cause of action under California law, but rather, an equitable principle that may support restitutionary relief. *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004). The enrichment is unjust only if the circumstances are such that, as between the two parties, it is unjust for the person to retain it. *First Nationwide Savings v. Perry*, 11

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 25 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   Cal. App. 4th 1657, 1662 (1992).  Consequently, in order to prove their unjust

2   enrichment claim, each class member's individual circumstances must be examined to

3   determine whether anything was wrongfully, *i.e.*, unjustly, taken from them.  Without

4   this preliminary determination, there can be no further analysis as to what – if

5   anything – must be restored to each class member.  *Graybeal v. Am. Sav. & Loan*

6   *Ass'n.*, 59 F.R.D. 7, 15 (D.D.C. 1973) (claims for unjust enrichment do not lend

7   themselves to class resolution because they "clearly involve questions of law or fact

8   which will necessarily require answers based on each individual loan contract between

9   a particular borrower and a particular lending institution").

10       Moreover, as Russ specifically conceded, students are required to pay UOPX

11   tuition for classes they attended, and the value of the education they received while

12   attending UOPX.  *E.g.* Ex. 29, 139:12-15.  Ingram and Martin also agree.  Ex. 46,

13   111:24-112:8; Ex. 80, 25:7-14.  Moorehead, in contrast, was not clear about whether

14   she believes she has an obligation to pay money to anyone.  Ex. 66, 151:12-153:10.

15   As illustrated through the named Plaintiffs themselves, the value conferred by UOPX

16   cannot be determined on a classwide basis.

17       In any event, the wholesale voiding of all student debts owed by the purported

18   class cannot be the proper measure of relief as it fails to take into consideration any of

19   the benefits conferred by UOPX (*i.e.*, offsets) to class members.  Hence, Plaintiffs'

20   requested relief is not amenable to a simple formula that can be administered on a

21   classwide basis.  *Gardiner Solder Co. v. SupAlloy Corp. Inc.*, 232 Cal. App. 3d 1537,

22   1543 (1991) (to allow plaintiff to avoid paying for the services received pursuant to a

23   voidable contract "would be unconscionable resulting in unjust enrichment to

24   [plaintiff]."); *King*, 83 Cal. App. 2d at 159 (a voiding party must restore everything of

25   value he has received); Restatement (Second) of Contracts § 384 (1981) ("A party

26

27

28

– 26 –

who seeks restitution of a benefit that he has conferred on the other party is expected to return what he has received from the other party.").[14]

**F.     The California CLRA Claim Cannot Be Certified Because Reliance And Materiality Cannot be Proven on a Classwide Basis.**

The CLRA is limited in scope to persons who suffered "any damage as a result of . . . a method, act, or practice declared to be unlawful by Section 1770. . . ."  Cal. Civ. Code § 1780.  A plaintiff suffers injury "as a result" of a misrepresentation under the CLRA if the plaintiff actually relied on the relevant representations or omissions." *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 810 (2007).  The requirements of establishing reliance and materiality under the CLRA for each class member is no different from Plaintiffs' common law fraud claim.  *Caro*, 18 Cal. App. 4th 644, 667-68; *Gonzalez*, 247 F.R.D. 616, 623-24.  Accordingly, Plaintiffs must establish that each class member relied on the alleged misrepresentation or omissions regarding UOPX's Title IV return obligations, and must allege that such misrepresentations were material to them.  Because individual issues regarding reliance and materiality and injury predominate in this case, Plaintiffs' CLRA claim cannot be certified.  *See In re Vioxx Class cases*, ___ Cal.Rptr.3d ___, 2009 WL 2806197 (December 14, 2009); *Deitz v. Comcast Corp*., 2007 WL 2015440 (N.D. Cal. 2007); *Cohen v. DirecTV*, 178 Cal.App.4th 996, 980, 981.

**G.     The California UCL Claim Cannot Be Certified**

In order to prevail on a UCL claim, a plaintiff must prove that he or she suffered an "injury in fact" or "lost money or property as a result of the alleged violation.  Bus. & Prof. Code § 17204.  In the *In re Tobacco II Cases,* 46 Cal.4th 298, 326 (2009), the California Supreme Court affirmed that a plaintiff prosecuting an

---

14 Indeed, the Restatement contains the following apt illustration: "A puts his son in B's private school, paying a year's tuition in advance.  During the first month of school the son is wrongfully expelled by B.  A is entitled to restitution of the amount of tuition paid less the benefit to A of B's services during the first month."  *Id*., cmt. 3, illustration 5.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   UCL action must satisfy an actual reliance requirement.  In support of her UCL claim,

2   the California representative Russ alleged that prior to or at the time of enrollment,

3   Defendants provided "financial disclosure documents which both omitted material

4   information and made misleading representations about the ability to utilize Federal

5   financial aid funds to cover the tuition costs she would incur if she elected to attend

6   UOP."  FAC ¶ 109.  Russ further submitted a declaration, in support of the Motion,

7   that she selected "financial aid" as her method of tuition payment on the Student

8   Financial Agreement and without financial aid, "I would not have been able to pay

9   tuition and would have not attended the school."  Ex. F to Braun Declaration.

10        Even though Plaintiff Russ selected only the "Financial Aid Plan," that does not

11   end the analysis regarding her reliance on UOPX's alleged misrepresentations and

12   omissions.  Notably, Plaintiff Russ also indicated, on a separate "University of

13   Phoenix – Southern California Financial Aid Tuition Worksheet," that she would pay

14   "Cash" in the amount of "$1,383.00" for "out of pocket expenses" which included

15   tuition and costs not covered by financial aid.  Ex. 27.  Thus, Russ was fully aware

16   that her financial aid did not cover all of her school expenses and she decided to enroll

17   anyways.

18        Also, as discussed above, Russ was aware of UOPX's return of Title IV policies

19   at the time she enrolled, but she did not think they applied to her because she fully

20   intended to complete her schooling.  Supra at 10.   In any event, Russ has not only

21   failed to establish any injury in fact caused by Defendants' alleged unfair business

22   practices, but contrary to the allegations of the FAC and Motion, UOPX did credit all

23   financial aid earned by Russ to her tuition charges.  Collins Decl. ¶ 17.  Thus, the

24   UCL claim cannot be certified because the sole class representative cannot

25   demonstrate reliance or materiality.  *See Sanchez v. Walmart Stores, Inc.*, 2009 WL

26   2971553 (E.D. Cal. 2009) (*Tobacco II* did not change or alter the law on materiality

27   under the UCL") (denying class certification where plaintiff failed to demonstrate that

28   the alleged misrepresentations or omissions were material)*; Caro*, 18 Cal. App. 4th at

– 28 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

666-69 (affirming denial of certification of UCL class where "it would be a matter of individualized proof whether an alleged misrepresentation "constituted a material misrepresentation to class members"); *Gonzalez*, 247 F.R.D. at 625.

Not only has Russ failed to make a prima facie showing as the UCL class representative, but individual issues predominate in the case about which of the many documents and disclosures provided to prospective students were read and understood by members of the class, what was material to each class member's decision to enroll, whether the class members also relied on oral statements by UOPX employees or their own prior experiences and understanding. Moreover, whether Defendants failed to apply all earned Title IV funds to each student's tuition charges cannot be determined without an examination of such factors such as the particular student's enrollment date, the student's last date of attendance, the total amount of financial aid disbursed, the type of financial aid disbursed (loans versus grants), the date the financial aid was disbursed, the date any student's loan was certified, the amount of coursework completed by the student before withdrawing, and the total institutional charges for the payment period. Supra at 3-4, 7-8. Because individual issues predominate over common ones on the UCL claim, class certification should be denied. *Kaldenbach*, 178 Cal.App.4th at 849-50 (variances in presentations made to consumers precluded a finding of a uniform business practice givine rise to the UCL claim); *Cohen*, 178 Cal.App.4th 996 (holding that *Tobacco II* was "irrelevant" to class certification because "standing" is simply is not the same as "commonality") (affirming denial of class certification).

## VI.   A CLASS ACTION IS NOT A SUPERIOR METHOD FOR ADJUDICATING THE CLAIMS RAISED IN THIS CASE.

Not only do Plaintiffs fail to satisfy the predominance prong of Rule 23(b)(3), but they fail to satisfy the superiority prong as well. Under Rule 23(b)(3), the class action device should be used only if it "will achieve economies of time, effort and expense, and promote uniformity of decisions as to similarly situated persons, without

– 29 –

sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.  The superiority analysis is "intertwined" with the predominance analysis; when there are no predominant common issues, "class treatment would be either singularly inefficient . . . or unjust."  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 n.12 (11th Cir. 1997).  Moreover, the "greater the number of individual determinations that must be made, the less manageable a class action becomes."  *Andrews v. AT&T Co.*, 95 F.3d 1014, 1024-25 (11th Cir. 1996).

Here, as demonstrated, Plaintiffs' action is replete with individual issues relating to reliance, materiality, and entitlement to relief that cannot be established with common proof.  *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 193 F.R.D 505, 513 (W.D. Mich. 2000) (the need for individualized proof on reliance or causation renders a class action trial unmanageable).  Further, Plaintiffs make no showing whatsoever as to how this action can be managed on a classwide basis.  F.R.C.P. 23(b)(3)(D).  First, the threshold question of whether Defendants are even liable under the claims asserted by Plaintiffs requires an individualized analysis as to reliance, causation, materiality, as well as a review of each student's financial aid file to analyze whether the Title IV return analysis was properly performed.  The overwhelming resources this analysis will entail have already been documented.  *See* Collins Decl.  Yet, Plaintiffs fail to address at all how these issues can be tried on a classwide basis, much less submit a trial plan to manage these issues.  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ("Absent knowledge of how [individual] cases would actually be tried . . . it [is] impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials.").

Second, although Plaintiffs cannot decide what to call it, (*e.g.*, restitution, reimbursement, cancelling debt, declaring debt unenforceable, debt extinguishment, etc.), Plaintiffs ultimately seek to void each class member's debt in its entirety and allow each class member to walk away free and clear of any obligations to UOPX. This relief, however, runs afoul of Plaintiffs' own belief that they should pay for the

– 30 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    classes they attended.  Moreover, this relief cannot even be considered until after

2    balancing the equities of the benefits each class member received.  *Beley v. Municipal*

3    *Ct.,* 100 Cal. App. 3d 5, 9 (1979); *Gardiner Solder Co.*, 232 Cal. App. 3d at 1543 (to

4    allow plaintiff to avoid paying for the services received pursuant to a voidable

5    contract "would be unconscionable").  These questions are not amenable to any

6    formula, but rather, can be determined only through an in-depth individual analysis of

7    each class member's financial aid file.  Accordingly, the entitlement to damages, as

8    well as the computation of damages, require a mini-trial for each class member.

9    Under these circumstances, no class can be certified.[15]  *In re Rezulin Prods. Liab.*

10   *Litig.*, 210 F.R.D. 61, 69 (S.D.N.Y 2002) ("question of whether an individual class

11   member got his or her money's worth is inherently individual;" restitution analysis

12   cannot be undertaken on classwide basis); *Robertson*, 2004 U.S. Dist. LEXIS 7788,

13   *13-14 (class action is not a superior method because the measure of damages is

14   different for each class member based on individualized circumstances).

15   **VII.   PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS OF RULE**

16          **23(B)(2) FOR THE PROPOSED NATIONWIDE CLASSES**

17          **A.    <u>The Nationwide Fraud and Breach of Contract Claims Are Not</u>**

18                 **<u>Cohesive.</u>**

19          Perhaps aware that individual inquiries undermine their Rule 23(b)(3) damage

20   class, Plaintiffs attempt a shortcut by seeking certification of a nationwide fraud and

21   breach of contract class under Rule 23(b)(2).  Rule 23(b)(2), however, is anything but

22   a shortcut.  In order to certify a class under Rule 23(b)(2), Plaintiffs must establish

23

24   _____

     [15] Plaintiffs also fail to address a threshold hurdle confronting them.  The disclosure of student

25   records, including financial aid records, violates the Family Educational Rights and Privacy Act
     ("FERPA"), codified at 20 U.S.C. § 1232g *et seq.*, and the corresponding regulations promulgated

26   by the Department of Education, codified at 34 C.F.R. § 99.1 *et seq.*  *See* 20 U.S.C. § 1232g(b), 34
     C.F.R. § 99.30.  FERPA requires Defendants to obtain a signed and dated written consent from

27   UOPX's students identifying the specific records that may be disclosed, the purpose of the
     disclosure, and the identity of the parties to whom the disclosure may be made.  34 C.F.R. § 99.30.

28   Without such express consent, Defendants cannot produce the class members' student records.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    that Defendants "acted or refused to act on grounds generally applicable to the class."

2    F.R.C.P. 23(b)(2).  Certification under (b)(2) does not relieve a court of its obligation

3    to determine whether the individual issues preclude certification.  *Barnes v. Am.*

4    *Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).  "In fact, a (b)(2) class should actually

5    have more cohesiveness than a (b)(3) class.  *In re Prempro Products Liability*

6    *Litigation*, 230 F.R.D. 555, 569 (E.D. Ark. 2005), *citing Barnes*, 176 F.R.D. at 500;

7    *Penson v. Terminal Transp. Co.*, 632 F.2d 989, 993094 (5th Cir. 1981) ("[t]he theory

8    underlying the less stringent notice requirements for Rule 23(b)(2) action is that there

9    is purportedly a greater degree of "cohesiveness or unity in the class than in 23(b)(3)

10   actions, which minimized the need for notice and a right to opt out").  Because relief

11   under Rule 23(b)(2) is a "group remedy," the class members must be cohesively

12   bound together by a legal relationship or a significant common trait.  *Hammett v. Am.*

13   *Bankers Ins. Co. of Fl.*, 203 F.R.D. 690, 696 (S.D. Fla. 2001).  Accordingly, under a

14   Rule 23(b)(2) class, no individual determination into each class member's entitlement

15   to injury should be necessary.  *See Id.*

16     Contrary to the requirements of Rule 23(b)(2), the proposed nationwide breach

17   of contract claim is not sufficiently cohesive.  As repeatedly discussed above,

18   Plaintiffs and the class members received, reviewed and understood different written

19   disclosures throughout the enrollment process.  Moreover, the various "forms"

20   provided by UOPX to prospective students were hardly uniform, as each student had

21   to choose from different options regarding their financial aid and how they would pay

22   their UOPX tuition.  Supra at 21-22.  Also, the "forms" themselves vary from state to

23   state.  *Compare* Exs. 10 and 68.  *See also* Disclosure Agreements required in

24   California, Iowa, Kansas, Wisconsin, Tennessee and Minnesota.  Exs. 4-8, 14.

25     Regarding the nationwide fraud claim, as already examined above, the

26   threshold issue of each class member's entitlement to relief is plagued by individual

27   inquiries.  First, only class members that relied on the alleged misrepresentations are

28   entitled to any relief.  Supra, 17-19.  This inquiry, however, is not amenable to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

classwide proof.  Second, whether or not class members are entitled to any relief at all can be determined only after each class member's circumstances is reviewed to determine whether Defendants failed to properly apply a class member's financial aid funds to earned tuition charges.  Supra, 3-4, 7-8.  This analysis is the quintessential individual inquiry, bound neither by cohesiveness nor common trait.  *Hammett*, 203 F.R.D. at 697 (rejecting 23(b)(2) class: "the reasons why a class member incurred an increase in debt, late fees, increased interest rates, and over limit fees can depend on individual factors.  For example, whether a class member was improperly charged for a late fee depends in part on the late fee provision of his or her cardholder agreement and when the putative class member sent in his or her claim.  Considering a late fee charge may not be wholly the result of Defendants' alleged scheme to defraud, but may result from other factors, including the actions of the Insured, Plaintiff's damages are not merely incidental to the equitable relief sought on behalf of the entire class, making certification under 23(b)(2) inappropriate"); *In the Matter of Friedman's, Inc.*, 363 B.R. 629, 638 (S.D. Ga. 2007) (23(b)(2) class cannot be certified because "assessing damages for these inherently individual inquires compels an inquiry into each class member's individual circumstances.")

**B.   The Proposed Nationwide Classes Seek Predominantly Monetary Relief**

Further, certification under Rule 23(b)(2) is unavailable if Plaintiffs seek predominantly monetary damages.  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007); *Wilcox*, 97 F.R.D. at 446 ("While plaintiffs do seek an injunction, money damages represent the major portion of the relief sought.")  Simply asserting that the primary relief sought is declaratory rather than monetary is of no import.  Rather, if the declaratory relief requested is simply a request for a declaration of liability, in order to facilitate monetary damages such as restitution, the 23(b)(2) class fails.  *Hammett*, 203 F.R.D. at 697 (plaintiffs' request for an accounting and disgorgement of alleged improper collection of late fees and over limit fees is not

– 33 –

appropriate for certification under Rule 23(b)(2)); *Powers v. Gov. Employees Ins. Co.*, 192 F.R.D. 313, 318 (S.D. Fl. 1998) ("The declaratory judgment count serves the ultimate goal of monetary restitution and is designed primarily to facilitate and ensure the satisfaction of monetary relief.").

Here, Plaintiffs' sweeping declaratory relief – to declare all debt owed by each class member to UOPX void and unenforceable – is nothing more than a declaration that Defendants are in fact liable under each of the claims asserted in the FAC.  By seeking such a sweeping declaration, Plaintiffs seek the ultimate monetary relief of restitution (or voiding of the entire debt) as to each class member.  Accordingly, Plaintiffs' proposed 23(b)(2) class is nothing but an end run around Rule 23(b)(3). *Elliott v. ITT Corp*., 150 F.R.D. 569, 576 ("While plaintiff would broadly characterize her action as seeking a declaration that [defendant's] practices are unlawful and that borrowers may rescind their loan contracts, this court cannot realistically conclude that injunctive or declaratory relief is the predominant relief requested"); *Mahfood v. QVC, Inc*., 2008 WL 5381088 (C.D. Cal. 2008) (denying class certification under 23(b)(2) where court was not convinced primary goal in bringing action was injunctive relief where prayer for relief repeatedly requested actual damages, rescission, restitution and even disgorgement of profits).

## C.   Choice-of-Law Issues Prevent Certification of the Nationwide Fraud and Breach of Contract Claims Under Rule 23(b)(2).

"Plaintiffs' common law claims are not insulated from the choice-of-law analysis simply because they are grouped under 23(b)(2).  Accordingly, Plaintiffs must show, prior to class certification, that the differences in state laws within each of their groupings are nonmaterial."  *In re Prempro*, 230 F.R.D. at 562.  In order to satisfy this burden, Plaintiffs "must provide the court with model jury instructions and verdict forms, as well as . . .  [a grouping] of state laws by their relevant differences." *Id., quoting In re Rezulin Products Liability Litigation*, 210 F.R.D. 61, 71 n. 59 (S.D.N.Y. 2002).  Indeed, an effective trial plan includes specific jury instructions that

– 34 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  address differences in state laws.  *See In re Paxil Litig.*, 212 F.R.D. 539, 546 (C.D.

2  Cal. 2003).  A trial plan must also define specific subclasses so the court may

3  determine whether it can avoid manageability issues.  *See Zinser*, 253 F.3d at 1190.

4  This task also includes identifying eligible representatives for each subclass.  *Id*. at

5  1190.

6       Here, Plaintiffs fail miserably.  First, Plaintiffs do not provide the court with

7  any model jury instructions or verdict forms regarding their fraud and breach of

8  contract claim, much less a trial plan addressing the manageability of this case.  This

9  failure disposes of Plaintiffs' 23(b)(2) class.  Second, although Plaintiffs attempt to

10  group the laws of each 50 states, it is evident that these grouping are cursory at best,

11  and substantively incorrect on several occasions.  Courts routinely deny certification

12  of nationwide fraud classes because the variance in the fraud claim among states

13  overwhelms any attempt at a class trial.  *Mack v. General Motors Acceptance Corp.*,

14  169 F.R.D. 671, 677-78 (M.D. Ala. 1996) (state law variance in whether required

15  reliance in fraud is "justifiable" standard or "reasonable" standard, and facts giving

16  rise to duty to disclose defeats nationwide class); *In re Bridgestone/Firestone, Inc.*,

17  288 F.3d 1012, 1015 (7th Cir. 2002); *Castono*, 84 F.3d at 741; *Hudson v. Capital

18  Mgmt. Int'l., Inc.*, 565 F. Supp. 615, 630 (N.D. Cal. 1983).  Likewise, a nationwide

19  contract class cannot be certified either due to the variance in state laws.  *Duchardt v.

20  Midland Nat'l Life Ins. Co.*, 2009 WL 3824332, *14 (S.D. Iowas July 23, 2009);

21  Clausnitzer v. Fed. Exp. Cor., 248 F.R.D. 647, 660 (S.D. Fla. 2008); *Marino v. Home

22  Depot U.S.A., Inc.*, 245 F.R.D. 734-35 (S.D. Fl. 2007) (state law variance on whether

23  breach of contract requires materiality defeats nationwide class certification). Here,

24  Plaintiffs fail to carry their burden of establishing that this Court could, or should,

25  apply the laws of 50 different states in this action.

26  **IV.**   **<u>CONCLUSION</u>**

27       For all the foregoing reasons, Plaintiff's Motion for Class Certification should

28  be denied.

1

2

DATED:  January 25, 2010          REED SMITH LLP

3                                            By___/s/ Felicia Y. Yu_____

4                                            Felicia Y. Yu
                                             Attorneys for Defendants
5                                            APOLLO GROUP, INC., and THE
                                             UNIVERSITY OF PHOENIX, INC.

6

7    US_ACTIVE-103085678.1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

I, CANDICE A. SPOON, declare:

I am employed in the County of Los Angeles, State of California. My business address is Reed Smith LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, California 90071. I am over the age of eighteen years and not a party to the action in which this service is made.

On January 25, 2010, I caused to be served the document(s) described as:

**DEFENDANTS APOLLO GROUP, INC. AND THE UNIVERSITY OF PHOENIX, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| ☑ | BY CM/ECF ELECTRONIC DELIVERY: In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov |
| ☐ | BY PERSONAL DELIVERY: I personally delivered the document(s) listed above to the person(s) at the address(es) set forth above. |
| ☐ | BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Reed Smith LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, California 90071. |
| ☐ | BY ☐ UPS NEXT DAY AIR ☐ FEDERAL EXPRESS ☐ OVERNIGHT DELIVERY: I deposited such envelope in a facility regularly maintained by ☐ UPS ☐ FEDERAL EXPRESS ☐ Overnight Delivery [specify name of service: ] with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ UPS ☐ FEDERAL EXPRESS OVERNIGHT DELIVERY [specify name of service:] authorized to receive documents at Reed Smith LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, California 90071 with delivery fees fully provided for. |
| ☐ | by transmitting via facsimile on this date from fax number (213) 457-8080 the document(s) listed above to the fax number(s) set forth below. The transmission was reported complete and without error. The transmission report was properly issued by the transmitting fax machine. The transmitting fax machine complies with Cal.R.Ct 2003(3). |

| ☐ | BY E-MAIL:  I transmitted via email to the parties at the email addresses listed below. |
| ☐ | [State]   I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |
| ☑ | [Federal]   I declare under penalty of perjury that the foregoing is true and correct. |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 25, 2010, at Los Angeles, California.

_____

Candice A. Spoon

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

PROOF OF SERVICE

1

## SERVICE LIST

2

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

| | |
|---|---|
| Michael D. Braun, Esq.<br>Braun Law Group, P.C.<br>12304 Santa Monica Boulevard<br>Suite 109<br>Los Angeles, California  90025<br>Phone:  310.442.7755<br>Facsimile:  310.442.7756<br>Email:  service@braunlawgroup.com<br><br>*Attorneys for Plaintiffs, ANGELA RUSS,<br>SHAWN MARTIN, and NITISHA<br>INGRAM, individually and on behalf of<br>all others similarly situated* | Richard A. Adams, *admitted pro hac vice*<br>Phillip N. Cockrell, *admitted pro hac vice*<br>Corey D. McGaha, *admitted pro hac vice*<br>Leisa B. Pearlman, *admitted pro hac vice*<br>Reid D. Miller, *admitted pro hac vice*<br>Patton Roberts PLLC<br>Century Bank Plaza, Suite 400<br>2900 St. Michael Drive<br>Texarkana, Texas  75505-6128<br><br>Phone:  (903) 334-7000<br>Facsimile: (903) 334-7007<br>Email:   radams@pattonroberts.com<br>pcockrell@pattonroberts.com<br>cmcgaha@pattonroberts.com<br>lpearlman@pattonroberts.com<br>rmiller@pattonroberts.com<br><br>*Attorneys for Plaintiffs, ANGELA<br>RUSS, SHAWN MARTIN, and<br>NITISHA INGRAM, individually and<br>on behalf of all others similarly<br>situated* |
| Janet Lindner Spielberg, Esq.<br>Law Office of Janet Lindner Spielberg<br>12400 Wilshire Blvd., Suite 400<br>Los Angeles, CA  90025<br><br>Phone:  (310) 392-8801<br>Facsimile:  (310) 278-5938<br>Email:   jlspielberg@jlslp.com<br><br>*Attorneys for Plaintiffs, ANGELA RUSS,<br>SHAWN MARTIN, and NITISHA<br>INGRAM, individually and on behalf of<br>all others similarly situated* | |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28